Carroll
No. 81-351

GEORGE R. SCHEELE *& a.*

v.

VILLAGE DISTRICT OF EIDELWEISS *& a.*

December 10, 1982

1016

*Sulloway, Hollis & Soden,* of Concord (*Stephen M. Duprey* and *Robert M. Larsen* on the brief, and *Mr. Duprey* orally), for the plaintiffs.

*Cooper, Hall, Whittum & Shillaber,* of Rochester (*Peter A. Handy* on the brief and orally), for the defendant intervenor, Great Northern Land Corporation.

*Dickson, Fauver & Cooper,* of North Conway, filed no brief for the defendant Village District of Eidelweiss.

BATCHELDER, J. This appeal involves a long-standing dispute between these parties, primarily the plaintiffs, George and Doris Scheele, and the company from which they bought their residential-recreational property, Great Northern Land Corporation (Great Northern). The Superior Court (*Wyman,* J.) ruled (1) that the refusal of the Village District of Eidelweiss (district) to supply water to some of its residents (the Scheeles) until receiving a release from the previous supplier of water (Great Northern) was an unconstitutional violation of 42 U.S.C. § 1983 (1976), (2) that the plaintiffs owed Great Northern the sum of $1,250 as the reasonable value of the water services previously supplied, and (3) that the reasonable value of the attorney's fees owed the plaintiffs under 42

U.S.C. § 1988 (1976) was $1,500. We affirm the first ruling; we reverse the court's decision on the quantum meruit claim; and we remand for the recalculation of attorney's fees.

The plaintiffs purchased a lot in the Eidelweiss subdivision in 1968 from Great Northern. Unlike later deeds from Great Northern, the plaintiffs' deed contained no provision for payment of a maintenance fee for roads, snow removal, water services, community recreational areas and other services provided by Great Northern. In 1971, Great Northern began billing the residents of Eidelweiss, including the plaintiffs, a unified maintenance fee. The plaintiffs refused to pay the fee, but instead sent Great Northern $50 per year, which they believed was the reasonable value of the water services provided. In September 1976, Great Northern discontinued the plaintiffs' water service for non-payment of the maintenance fee.

In October 1976, the plaintiffs instituted an action in Massachusetts, alleging the wrongful termination of water service. Great Northern counterclaimed on a theory of express or implied contract, alleging that the plaintiffs owed it money for maintenance services rendered. The Massachusetts trial court denied the relief requested by both parties, finding that no contract existed and, thus, that the plaintiffs had no contractual right to demand water service and Great Northern had no contractual right to payment. This verdict was upheld on appeal.

In 1980, Great Northern sold many of its assets, including roads and the water system, to the district. Although there is evidence in the record that the value of these assets was in excess of $600,000, the purchase price was $200,000. Included in the sale agreement was a clause prohibiting the district from providing water to certain residents, including the plaintiffs, until a release was obtained from Great Northern. Another provision in the agreement required Great Northern to indemnify the district for any liability incurred as a result of the prohibition clause. The district thereafter refused to supply water to the plaintiffs because of the provisions of the sale agreement.

In June 1980, the plaintiffs filed the present suit for declaratory judgment for a determination of their right to water service from the district. The Superior Court (*Temple*, J.) issued a temporary order requiring restoration of water service conditioned on the posting of a cash bond. Great Northern then intervened as a defendant and counterclaimed for the value of the services earlier provided on a theory of unjust enrichment. Shortly before trial, the plaintiffs sought a voluntary non-suit so that they could institute a section 1983 action instead. The Superior Court (*Wyman*, J.) denied the motion for a non-suit and instead consolidated the section 1983

action with the other pending actions. After a trial on the merits, the plaintiffs and the defendant Great Northern took these appeals.

The plaintiffs argue that Great Northern's counterclaim for maintenance fees and water services is barred by either of the doctrines of res judicata or collateral estoppel. The trial court held that although the previous Massachusetts litigation barred the claim for maintenance fees, it did not bar Great Northern from bringing suit for the value of the water provided. We disagree. The doctrine of res judicata prevents the parties from relitigating matters actually litigated and matters that could have been litigated in the first action. *Town of Durham v. Cutter*, 121 N.H. 243, 246, 428 A.2d 904, 906 (1981). "The heart of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in subsequent litigation involving the same cause of action." *Concrete Constructors, Inc. v. The Manchester Bank*, 117 N.H. 670, 672, 377 A.2d 612, 614 (1977). Modern usage of the term res judicata is broad, covering all the various ways in which a judgment in one action will have binding effect in another. *Bricker v. Crane*, 118 N.H. 249, 252, 387 A.2d 321, 323 (1978).

Collateral estoppel, although not applicable to this case, is an extension of res judicata which prevents the same parties, or their privies, from contesting in a subsequent proceeding on a different cause of action any question or fact actually litigated in a prior suit. *Id.* at 253, 387 A.2d at 323; *cf. Cutter v. Town of Durham*, 120 N.H. 110, 111, 411 A.2d 1120, 1121 (1980) (mutuality of parties not always required under the doctrine of collateral estoppel). Considerations of judicial economy and a policy of finality in our legal system have resulted in the development of the doctrines of res judicata and collateral estoppel to avoid repetitive litigation. *Id.* at 252, 387 A.2d at 323. "The decisions in this state, in the final analysis, have always turned on whether there had been a full and fair opportunity to the party estopped to litigate the issue barring him . . . ." *Sanderson v. Balfour*, 109 N.H. 213, 216, 247 A.2d 185, 187 (1968).

The Massachusetts action was instituted by the plaintiffs alleging wrongful termination of water service. Although Great Northern counterclaimed on theories of express and implied contract, the trial court denied relief to both parties. Under Rule 13(a) of the Massachusetts Rules of Civil Procedure (compulsory counterclaims) the defendants were required to state as a counterclaim "any claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the

opposing party's claim . . . ." Counterclaims are mandatory if the counterclaim "arises out of the transaction or occurrence which is the subject of plaintiff's claim; [and] the defendant must assert it, or forever lose it." MASS. R. CIV. P. 13 (Reporters' Notes 1973).

■ Great Northern's claim under the theory of quantum meruit is a counterclaim which should have been asserted in the Massachusetts case because it arises out of the same transaction as the plaintiffs' suit. Because our cases hold that res judicata will bar further litigation where parties have been given a full and fair opportunity to litigate, *Sanderson v. Balfour*, 109 N.H. at 216, 247 A.2d at 187, we will apply the doctrine of res judicata on these facts. Not only did Great Northern have the opportunity to raise quantum meruit as a counterclaim in the original litigation, but the Massachusetts Rules of Civil Procedure required that such a claim be made or lost. MASS. R. CIV. P. 13.

■ Great Northern argues that the trial judge erred in finding that the district unconstitutionally withheld water from the plaintiffs. We disagree. Since the district began supplying water to its residents, it has been subsidizing the operation through taxes and assessments, which the plaintiffs have paid. The district's withholding water service in order to coerce payment of a debt owed to a third party is an unconstitutional exercise of its powers.

■ The plaintiffs argued that they should have been awarded damages in their section 1983 action. The trial judge was correct in refusing to award damages because there was insufficient evidence in the record to justify an award. *See Hangar One, Inc. v. Davis Assoc's, Inc.*, 121 N.H. 586, 590, 431 A.2d 792, 795 (1981).

■ Finally, both sides dispute the attorney's fees awarded. We have held that the award of attorney's fees pursuant to 42 U.S.C. § 1988 (1976) is proper in a section 1983 action. *Royer v. Adams*, 121 N.H. 1024, 1027, 437 A.2d 316, 318 (1982). The award of attorney's fees, however, must be based on the actual time spent on the section 1983 action. New Hampshire still adheres to the rule that attorney's fees are not awarded except in limited circumstances. *See Silva v. Botsch*, 121 N.H. 1041, 1043, 437 A.2d 313, 314 (1981). Attorney's fees may not be awarded other than when permitted by statute or case law. In the present case, it would be improper to award attorney's fees for time spent on the quantum meruit claims.

■ In calculating the award of attorney's hourly fees in section 1983 actions, we choose to have our courts follow the "lodestar" approach adopted by the First Circuit. *See Furtado v. Bishop*, 635 F.2d 915, 919–20 (1st Cir. 1980). The party requesting the fees must

submit an affidavit outlining in reasonable detail the actual time spent on the case (or issue) and setting forth a rate for that person who performed the work. *Id.* at 920. The trial judge must then determine if the time spent and the rates charged are reasonable. He may then adjust the fee, upwards or downwards, to reflect such factors as "the contingent nature of any fee (if such is not reflected in the hourly rate), delay in payment, quality of representation (i.e., an unusually good or poor performance above or below the skill already reflected in the hourly rates), exceptional (and unexpected) results obtained, etc." *Id.; see Copeland v. Marshall,* 641 F.2d 880, 890–94 (D.C. Cir. 1980) (en banc); *see also Miles v. Sampson,* No. 81-1213, slip op. at 5–8 (1st Cir. March 25, 1982); *cf. Couture v. Mammoth Groceries, Inc.,* 117 N.H. 294, 296–97, 371 A.2d 1184, 1186 (1977) (award of contingent attorney's fee). *See generally* Kelley, *Preparation of Fee Petitions, Attorney's Fees in New Hampshire—* C.L.E. EXCERPT 113–35 (1982); Devine, *The Criteria for Awarding Attorney's Fees in Federal Court, Attorney's Fees in New Hampshire—*C.L.E. EXCERPT 1–10 (1982).

Because the award of $1,500 in attorney's fees is unsupported by the record, we remand this issue to the trial court for recomputation of the award in a manner consistent with this opinion.

*Affirmed in part; reversed in part; remanded.*

All concurred.