**Joseph J. FIUMARA, Plaintiff, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANIES, et al., Defendants, Appellees.**

**Nos. 84–1270–1271.**

United States Court of Appeals, First Circuit.

Argued Sept. 6, 1984.
Decided Oct. 11, 1984.

Steven Eric Feld, Portsmouth, N.H., for appellant.

Donald E. Gardner, Manchester, N.H., with whom George F. Gormley, Alice A. Hanlon, Boston, Mass., Michael Lenehan, Concord, N.H., and Devine, Millimet, Stahl

& Branch, Manchester, N.H., were on brief, for Fireman's Fund Ins. Companies and Dorchester Mut. Fire Ins. Co.

Anthony A. McManus, Dover, N.H., with whom Edmund J. Boutin, Fryer, Boutin, Warhall & Solomon, Londonderry, N.H., and Burns, Bryant, Hinchey, Cox & Shea, Dover, N.H., were on brief, for James Blomley, Jr., Arson Detection Specialists, Inc.

Katherine M. Hanna, Manchester, N.H., with whom Theodore Wadleigh and Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H., were on brief, for New York Testing Laboratories, Inc.

Before COFFIN and BOWNES, Circuit Judges, and SELYA,[*] District Judge.

SELYA, District Judge.

In the early morning hours of March 1, 1980, the Drop Anchor Motel in Hampton, New Hampshire was damaged by fire. The property had been administered by its beneficial owner and operator, plaintiff-appellant Joseph J. Fiumara, and insured for fire and other casualty on a pooled-risk basis by Dorchester Mutual Fire Insurance Company (DMFIC) and Fireman's Fund Insurance Company (FFIC). DMFIC and FFIC, both of which are appellees in this proceeding, are sometimes collectively referred to herein as "the insurers."

After the fire had been extinguished, the authorities conducted an investigation and determined that the blaze was of suspicious origin. The State Fire Marshall's office mounted a more intensive inquiry and filed a report confirming the incendiary nature of the conflagration. Their interest sparked by reports of the fire's untoward origin, the insurers employed Arson Detection Specialists, Inc. (ADS) to carry out an independent investigation. ADS did so, and the appellees Morris J. Torf, Lawrence L. Keenan, and James Blomley, Jr. all participated in various ways in that indagation. As this effort progressed, ADS removed samples from the charred remains of the motel and sent them to New York Testing Laboratories (NYTL) for screening to determine the presence of accelerants. NYTL's ensuing conclusion was positive.

As a result of these investigations, the insurers were confident that accelerants had been present, that the fire had multiple points of origin, and that there was more to the incident than a garden-variety mishap. These beliefs, in turn, fueled the presentiment that the damage to the motel had been caused by arson. Their suspicions thus kindled, the insurers declined to pay under the policies.

In 1981, inflamed by the refusal of the insurance carriers to honor their contracts and to cover the loss, Fiumara filed two actions for breach of contract against FFIC, and a matching pair of suits against DMFIC. These proceedings were brought in a New Hampshire state court, viz., Rockingham County Superior Court. Fiumara was a named plaintiff in all of the cases. The complaints sought not only to recover the policy proceeds, but also to secure enhanced damages attributable to the bad faith which the insurers had allegedly displayed in their handling of the claims. DMFIC and FFIC answered the complaints, denied liability, and asserted that the causes of action were barred by the arson exclusion provisions of their respective policies.

In accordance with local practice, the four suits were consolidated and an evidentiary hearing was held before a master. On August 23, 1982, the master issued a detailed report (Report) in which he recommended to the court that Fiumara recover the amounts due on the policies for the fire damage, with interest thereon; but that there be no incremental award "for any consequential damages, attorneys' fees or other recovery that would necessarily be predicated upon proof of bad faith [inasmuch as] the master finds that bad faith on the part of the defendants was not established as a matter of fact or law." Report at 7. In his subsidiary findings, the master noted that the insurers had "conducted an

[*] Of the District of Rhode Island, sitting by desig-
nation.

extensive, good-faith investigation," *id.* at 3–4; and that

> Under the circumstances the defendant companies would have been derelect [sic] in their duties and responsibilities not to have conducted and carried out the thorough and detailed investigation which they did. While this procedure may have generated a sense of impatience in the plaintiff, and while such investigation necessarily consumed more than the normal and usual amount of time necessary to investigate and resolve a routine, simple or ordinary fire loss claim, the evidence fails to support the plaintiffs' contention that the defendants' actions under the circumstances as found here were either unjustified or conducted in bad faith.

*Id.* at 4.

On August 30, 1982, the presiding superior court justice approved the Report and verdicts and decrees were entered in conformity therewith. Shortly thereafter, Fiumara filed a motion for new trial in the state court alleging that "since the time of trial, the plaintiffs have discovered that the defendant's [sic] evidence … was fabricated." That motion was denied, as was Fiumara's subsequent motion for reconsideration of the denial. While the record reflects that the appellant took exception to the superior court judgment and to the rejection of his post-trial motions, he prosecuted no appeal to the New Hampshire Supreme Court. Thus, the finality of the state court judgments cannot seriously be questioned.

Fiumara's fires were not, however, banked. On February 25, 1983, he filed a complaint against all of the present appellees (and, for good measure, against "John Does 1–20") in the United States District Court for the District of New Hampshire. He was represented by the same counsel

who fired away on his behalf in the state court. He professed to assert three distinct statements of claim. Count I alleged that the appellees intentionally inflicted severe emotional distress upon Fiumara by their dastardly attempt to show that he deliberately set the fire. Count II alleged essentially the same intentional imposition of psychological torment by means of statements to third parties to the effect that Fiumara was engaged in illicit activities anent the fire and the resultant insurance claims. Count III alleged invasion of privacy arising out of, and in the course of, the investigation into the blaze. Fiumara's federal suit was premised upon the court's diversity jurisdiction, 28 U.S.C. § 1332, and thereby implicated New Hampshire law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

After some preliminary skirmishing (none of which is material to the instant appeals), the district court on August 31, 1983 granted the insurers' motions for summary judgment and a motion to dismiss which had been filed by Blomley. Thereafter the district court granted NYTL's motion for dismissal; and eventually, to abbreviate a rather long but predictable story, *brevis* disposition was accorded in favor of each and all of the appellees. Final judgment was entered by the district court on March 28, 1984. These appeals followed in due course.

While the briefs and arguments of the parties have touched upon arcane points of New Hampshire law, particularly those concerning the generic viability of causes of action for intentional imposition of emotional harm, we need not wander so far afield in affirming the judgment below. In our view, this case is governed by well-settled principles of res judicata and collateral estoppel.[1]

---

1. We recognize that there is a distinction between res judicata (claim preclusion) and collateral estoppel (issue preclusion). *See Gonsalves v. Alpine Country Club*, 563 F.Supp. 1283, 1285 n. 6 (D.R.I.1983), *aff'd*, 727 F.2d 27 (1st Cir. 1984). We are also cognizant that, at least as to some of Fiumara's claims and as to certain of

the appellees, the latter doctrine may be the more apposite. Yet, the splitting of such fine hairs would be meaningless in this case, as these two lines of defense share a distinct family resemblance; under the New Hampshire cases, collateral estoppel is viewed merely as "an extension of the doctrine of res judicata." *Bricker*

■ The New Hampshire state court judgment in the original suit against the insurers must be given the res judicata effect prescribed by state law. *Migra v. Warren City School District*, —— U.S. ——, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466–67, 102 S.Ct. 1883, 1889–90, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). We have previously scanned the New Hampshire authorities, and have defined res judicata as applied in that jurisdiction in the following manner:

> [W]hen either party prevails in an action concerning a transaction, all of the plaintiff's possible rights to remedies against the defendant arising out of that transaction are extinguished.

*Roy v. Jasper Corp.*, 666 F.2d 714, 717 (1st Cir.1981). *See also Seabrook v. New Hampshire*, 738 F.2d 10 (1st Cir.1984).

The New Hampshire Supreme Court itself has said that the doctrine "prevents the parties from relitigating matters actually litigated and matters that could have been litigated in the first action." *Scheele v. Village District of Eidelweiss*, 122 N.H. 1015, 1019, 453 A.2d 1281, 1283 (1982). *See also*, to like effect, *Durham v. Cutter*, 121 N.H. 243, 246, 428 A.2d 904, 906 (1981); *Bricker v. Crane*, 118 N.H. 249, 253, 387 A.2d 321, 323 (1978).

In this instance, the appellant has already prevailed in an action concerning the insurers' joint obligations under their parallel indemnity policies. The circumstances which underlie this subsequent federal initiative either were, or could have been, litigated in those earlier New Hampshire proceedings. In the state court, Fiumara clearly and unambiguously placed in issue the character of the insurance investigation and whether it was undertaken in good faith. His brief to the state court not only raised questions about the handling of the

evidence on the part of DMFIC, FFIC, and their agents, but also explored claims that an adjuster had stated that the fire was intentionally set and that Fiumara was responsible for an earlier blaze on his property. Notwithstanding these asseverations, the master expressly found that the insurers had "promptly initiated and conducted an extensive, good-faith investigation...." Report at 3–4.

And, to fan the flames further, Fiumara's subsequent motion for a new trial was based squarely on the thesis that the insurers, through their investigators, had tampered with the proof. It is, of course, this very same allegation which forms the basis for much of the instant complaint. Nor did the appellant appeal either the original judgments or the denial of his motions for new trial. There is no reason to expend additional judicial resources on a matter which has already been fully and fairly litigated between Fiumara and the insurers. After all, Fiumara has already "had one bite of the apple, and the choice of the bite was [his]." *Gonsalves*, 727 F.2d at 29.

The appellant has made several other arguments in an effort to forestall a result which seems to us to be well nigh inevitable. These contentions generate far more heat than light; only three of them appear to require further comment.

■ Fiumara has gone to great lengths in endeavoring to characterize the gravamen of the instant action as one which arises out of the "separate transaction" of the insurers' conduct in the handling of his claim. Yet, all of the events which define the federal complaint occurred in the period before the state trial and were at least generally hinted at during that trial. If they were not then litigated as hotly as the plaintiff would now wish, they plainly could have been. Once a court of competent jurisdiction has decided an issue of fact or law necessary to its judgment, that deci-

---

*v. Crane*, 118 N.H. 249, 253, 387 A.2d 321, 323 (1978). Thus, to facilitate our analysis of the questions before us, we will use a shorthand reference to the term "res judicata" to embrace

both, without making any pretense of being more precise than the exigencies of the matter at bar warrant.

sion can—and should—preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Allen,* 449 U.S. at 94, 101 S.Ct. at 414; *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The appellees have been once burned and we are twice shy of sending them through the self-same ustulation again.

The appellant is similarly foreclosed from raising his claims against the investigators and the testing laboratory. While these appellees were not parties to the state suit, the application of res judicata and collateral estoppel, both in the federal courts and in New Hampshire, is no longer grounded upon mechanical requirements of mutuality. *See, e.g., Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 349–50, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971); *Brown v. R.D. Werner Co.,* 428 F.2d 375, 376 (1st Cir.1970); *Bricker v. Crane,* 118 N.H. at 254, 387 A.2d at 324; *Cutter v. Durham,* 120 N.H. 110, 111, 411 A.2d 1120, 1121 (1980). Instead, the significant question is whether a party has had a full and fair opportunity for judicial resolution of the same issue. *Blonder-Tongue,* 402 U.S. at 328–29, 91 S.Ct. at 1442, 1443; *Scheele,* 122 N.H. at 1019, 453 A.2d at 1284; *Bricker, supra; Sanderson v. Balfour,* 109 N.H. 213, 216, 247 A.2d 185, 187 (1968). That opportunity was palpably present in the state court proceedings. And, given the allegations of the federal complaint that ADS, NYTL, Torf, Keenan and Blomley were each and all acting as agents of the insurers when they committed the putative misdeeds for which they have now been sued, they clearly qualify as persons in privity with FFIC and DMFIC. Thus, the res judicata defense is unmistakably available to them. *Seabrook v. New Hampshire,* 738 F.2d at 11; *Bricker v. Crane,* 118 N.H. at 253, 387 A.2d at 323; *Scheele,* 122 N.H. at 1019, 453 A.2d at 1284. *Cf. Thirty Pines, Inc. v. Bersaw,* 92 N.H. 69, 69–70, 24 A.2d 500, 501 (1942).

Finally, Fiumara urges that extenuating circumstances—i.e., the fact that he did not smoke out the defendants' duplicity until much later—prevented him from effectively litigating those issues in the first series of suits; and, thus, that res judicata should not apply to bar the present one. We agree that, under New Hampshire law, there may be room for relief from the interdictory effects of res judicata where excusatory circumstances are present. *See, e.g., Bricker,* 118 N.H. at 249, 387 A.2d at 323; *Indian Head National Bank v. Simonsen,* 115 N.H. 282, 284, 338 A.2d 546, 547 (1975); *Laconia National Bank v. Lavallee,* 96 N.H. 353, 355, 77 A.2d 107, 108 (1950). Yet, this is plainly not such a case. We note that the appellant was certainly aware of the tampering issue and of its salient ramifications no later than the time when he filed the motion for a new trial (September 8, 1982). He not only availed himself of the opportunity to argue the matter in the state court, but he chose not to pursue it on appeal. In light of these facts, we can find no extenuative circumstances which would excuse the routine application of settled principles of res judicata to this case.

All litigation must come to an end; and there is no legal warrant for allowing the instant claims to arise Phoenix-like from the ashes of the state court proceedings. The earlier litigation extinguished Fiumara's rights against the appellees, and the district judge was patently correct in summarily disposing of the warmed-over repast which the appellant served up in the federal district court. And, since it should have been obvious from the start that the attempt to litigate anew claims which had previously been rejected was doomed to misfire, we assess double costs against the appellant under Fed.R.App.P. 38.

*Affirmed. Double costs in favor of appellees.*