Merrimack
No. 83-462

MORGENROTH & ASSOCIATES, INC.

v.

THE STATE OF NEW HAMPSHIRE

TOWNS OF TILTON AND NORTHFIELD

v.

THE STATE OF NEW HAMPSHIRE

March 20, 1985

*Stanton E. Tefft*, of Bedford, by brief and orally, for plaintiffs, Town of Tilton, Town of Northfield and Morgenroth & Associates, Inc.

*Gregory H. Smith*, attorney general (*Eve H. Oyer*, assistant attorney general, on the brief and orally), for the State.

SOUTER, J.   The plaintiffs appeal a ruling of the Superior Court (*Cann*, J.) that a default judgment in the superior court entered against the plaintiff Morgenroth in *Morgenroth & Associates, Inc. v. State of New Hampshire* bars the present claims. We affirm in the case first captioned above and reverse in the second.

An appeal of that earlier case to this court was one of three cases decided in *Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. 511, 431 A.2d 770 (1981). We refer to that opinion for a full statement of the facts up to that time. It is sufficient here to note that Morgenroth had brought actions against the towns of Tilton and Northfield to recover charges for Morgenroth's preparation of engineering plans for sewage treatment systems in those towns. Morgenroth had proceeded against the State as well, alleging in effect that the State had obtained the benefit of the engineering plans in the course of discharging its responsibilities to provide and operate sewage and waste disposal facilities for the Winnipesaukee river basin, which included the two towns. *See* RSA chapter 149-G (1977 and Supp. 1983).

In that appeal we held generally that RSA 491:8 abrogates the sovereign immunity of the State in actions based on express contracts and contracts implied in fact, but does not abrogate such immunity in an action based on a contract implied in law. *Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. at 515–16, 431 A.2d at 772–73. We held that RSA 491:8 did not, however, govern the scope of the municipal immunity of the towns. *Id.* at 518, 431 A.2d at 774. Since Morgenroth's offer of proof made it clear in any event that it intended to press claims against both the towns and the State based on allegations of contracts implied in fact, we remanded the cases with an order that Morgenroth should have leave to amend its pleadings in order to state such claims. *Id.* at 517, 431 A.2d at 774.

On remand, the superior court allowed Morgenroth to amend accordingly. Morgenroth and the towns then settled their actions, leaving Morgenroth's action against the State still pending. Although there were in fact two separate actions for liability for the plans originally prepared for the two towns, for simplicity we will hereafter refer to them in the singular, as Case A.

Under the terms of the settlements of the municipal actions in Case A, the towns assigned to Morgenroth whatever rights they had to claim indemnification from the State under RSA 149-G:2 (Supp. 1983). Thereafter Morgenroth moved to amend its complaint against the State by adding a new count, which would have alleged that judgments had been entered for Morgenroth in the two municipal actions, but had not been satisfied. The new count would not, however, have alleged that the municipalities had assigned to Morgenroth any rights they might have to seek indemnification from the State. The Superior Court (*Cann*, J.) denied the motion to amend on the ground, *inter alia*, that allegations of judgments against the towns were immaterial to Morgenroth's existing claim based on a contract implied in fact with the State. In the same order that rejected the amendment, the court also ordered Morgenroth to answer outstanding interrogatories within thirty days or suffer default.

Seven days after the superior court's order, Morgenroth brought two new actions against the State. In the first one, which we label Case B, Morgenroth repeated essentially the same allegations it had sought to raise in its unsuccessful motion to amend the pleadings in Case A. Morgenroth began the second new action, which we label Case C, in the name of the two towns. The declaration in Case C began by repeating some earlier allegations: that the towns had engaged Morgenroth to prepare engineering plans, that Morgenroth had produced them, and that the State had then acquired such plans when it "acquired, planned, constructed and operated a sewage and

waste control facility serving [the] towns." The allegations continued by asserting that Morgenroth had obtained judgments against the towns, which the towns had not paid. The declaration then alleged new matter, that the towns had assigned to Morgenroth their rights under RSA 149-G:2 (Supp. 1983) to require the State to pay the judgments against them.

RSA 149-G:2 (Supp. 1983) provides, *inter alia*, that certain payments due from a municipality in the Winnipesaukee river basin for engineering, planning or design work on sewers, "shall hereby automatically become the obligation of the state . . . ." In the light of this statutory language it is clear that in Case C Morgenroth has brought its action in the name of the towns as their assignee, claiming that they have a statutory right to indemnification for the judgments that Morgenroth obtained against them in the two earlier actions.

After commencing Cases B and C, Morgenroth took no further action in Case A. Morgenroth has represented that it believed that Cases B and C would be simpler to litigate than Case A would have been. In any event, it chose not to answer the interrogatories in Case A, and the court accordingly entered a final default judgment in favor of the State and against Morgenroth for its failure to respond to the interrogatories.

The State then raised that default judgment as the basis to dismiss Cases B and C on grounds of res judicata. The superior court granted the motion, and this appeal followed. Since Morgenroth has not briefed any issues that might be involved in the appeal of Case B, that appeal is deemed to be waived. *See Fleming v. Martin*, 122 N.H. 128, 130, 442 A.2d 584, 585 (1982). Thus, we confine our consideration to the propriety of dismissing Case C on grounds of res judicata.

■ ■ "The heart of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Concrete Constructors, Inc. v. The Manchester Bank*, 117 N.H. 670, 672, 377 A.2d 612, 614 (1977). "The doctrine of res judicata prevents the parties from relitigating matters actually litigated and matters that could have been litigated in the first action." *Scheele v. Village District*, 122 N.H. 1015, 1019, 453 A.2d 1281, 1283 (1982). Thus, to preclude the litigation of the present indemnification claim, the State must demonstrate that the present claim was or could have been litigated in a prior action between the parties for the same cause of action.

Each of these conditions must be met before the doctrine of res

judicata can be applied to bar a later claim. It is sufficient to note here that Cases A and C are based on different causes of action, so that as between those two cases the doctrine of res judicata can have no application.

■■ A cause of action is "the underlying right that is preserved by bringing a suit or action." *MBC, Inc. v. Engel*, 119 N.H. 8, 11, 397 A.2d 636, 638 (1979). The underlying right at issue in Case A was Morgenroth's right to enforce a contract that it allegedly had made with the State. The underlying right at issue in Case C is a town's statutory right under RSA 149-G:2 (Supp. 1983) to obtain indemnification from the State for payments made to third parties like Morgenroth. The underlying right sought to be preserved in each case is thus distinct and different, and res judicata is therefore inapplicable as between the two actions.

■■ The result is the same even if we employ res judicata in its broadest sense, to include the derivative doctrine of collateral estoppel. *See Scheele v. Village District*, 122 N.H. 1015, 453 A.2d 1281 (1982). While collateral estoppel does not require an identity of the earlier and later causes of action, it precludes the relitigation only of issues actually raised and determined in the earlier litigation. *Id.* at 1019, 453 A.2d at 1284. As we have described the pleadings in Case A, it is clear that neither the towns' right to indemnification nor their assignment of that right was ever pleaded. Thus, there was no judgment against Morgenroth in its capacity as assignee of the two towns, and the doctrine of collateral estoppel does not bar the litigation of Case C.

*Case B affirmed; Case C reversed.*

BATCHELDER and BROCK, JJ., did not sit; the others concurred.