In re **GLOBE DISTRIBUTORS, INC.**, Debtor.

**GLOBE DISTRIBUTORS, INC.,**
**and Dennis Bezanson,**
**Trustee, Plaintiffs,**

v.

**ADOLPH COORS COMPANY,**
**Defendant.**

Bankruptcy No. 88–807.
Adv. No. 88–97.

United States Bankruptcy Court,
D. New Hampshire.

May 27, 1992.

On Motion to Reconsider
Attorneys' Fees Aug. 6, 1992.

William S. Gannon, Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H., for Globe Distributors, Inc.

Peter Mosseau, Orr and Reno, Concord, N.H., for Adolph Coors Co.

Dennis Bezanson, South Portland, Me., for plaintiff.

## ORDER AND MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This adversary proceeding came on for trial before the Court for the week of October 15 to October 19, 1990, and oral argument on October 25, 1990, resulting in a final judgment for plaintiffs, entered on May 13, 1991. In the final judgment, damages were awarded to plaintiffs in the amount of $5,166,188, and they were doubled to $10,332,376 pursuant to the New Hampshire Consumer Protection Act.[1] Defendant was awarded $289,000 in counterclaim damages, thereby reducing plaintiffs' total damage award to $10,043,376, plus interest from October 18, 1988. This Court also allowed "reasonable attorneys' fees" and "costs" pursuant to the New Hampshire Consumer Protection Act. Presently before the Court is the amount of such attorneys' fees and costs that should be allowed and paid to plaintiffs' counsel by defendant.

The plaintiffs, Globe Distributors, Inc. (Globe) and Dennis Bezanson, Trustee (Trustee)[2], request a fee of $4,208,141.07, plus one-third (33⅓%) of the interest that accrued and that will accrue since the final judgment was entered on May 13, 1991.

129 B.R. 304. Plaintiffs also request reimbursement of $2,536.11 in out-of-pocket costs and expenses incurred by plaintiffs' counsel, the law firm of Wadleigh, Starr, Peters, Dunn & Chiesa, plus any further costs incurred by the firm defending the final judgment on appeal. In support of their request, plaintiffs submitted a statement for legal services rendered in this adversary proceeding and a memorandum of law in support of their motion for attorneys' fees. Defendant Adolph Coors Company (Coors) objects to the fee requested by plaintiffs, as more fully detailed below.

Plaintiffs' application recites 1,376 hours of attorney and paralegal time in handling the litigation in this adversary proceeding, which at their counsel's regular hourly rates[3] would indicate a fee of $148,174. As more fully described below, plaintiffs request the higher fee allowance of $4.2 million on the basis that such an amount is justified in consideration of the services rendered by their counsel in this particular proceeding. The higher fee request is one-third (33⅓%) of the damage award to Globe, and presents a "fee multiplier" of 28.4, i.e., in excess of 28 times the base lodestar amount of $148,174.

Defendant Coors objects to plaintiffs' fee request on several bases. Initially, Coors objects that, because some of the counts of plaintiffs' original Complaint were stricken, because plaintiffs only prevailed on three of the nine counts in their Complaint, and because plaintiffs were unsuccessful in their defense of Coors' counterclaims, plaintiffs should not recover attorneys'

---

1. N.H. RSA 358–A (Titled "Regulation of Business Practices for Consumer Protection" and commonly referred to as the "Consumer Protection Act".)

2. The Complaint was brought by plaintiff Globe Distributors, Inc. on December 28, 1988. On March 2, 1989, this bankruptcy case was converted from a Chapter 11 case to a Chapter 7 case, and Dennis Bezanson, Esquire was appointed as the Chapter 7 Trustee. By Order dated June 14, 1989, I directed the Chapter 7 Trustee to step in as a party plaintiff. A Motion to Add A Party Plaintiff was filed on July 13, 1989, however it was never noticed for hearing

and, consequently, the motion was never acted upon. By separate Order this date the Court has granted said motion. Accordingly, both Globe Distributors, Inc. and Dennis Bezanson, Trustee are listed as plaintiffs herein.

3. The hourly rates for plaintiffs' counsel were not provided, and, in any case, the rates would certainly differ for the various firm members (partners, associates, paralegals, and law interns) that worked on this lawsuit. However, an average hourly rate of $108 is indicated by dividing the fee of $148,174 by the total hours of 1376.

fees for time spent on those matters.[4]

■ In my judgment, the hours expended by plaintiffs' counsel on the litigation involved in this adversary proceeding clearly were not excessive, nor were the hourly rates anything but reasonable in terms of the complexity and toughness that the lawsuit presented. Plaintiffs' counsel were matched against the law firm of Orr & Reno, which is a very competent and aggressive law firm, and they were also matched against a very tough defendant. Further, I find that the matters upon which plaintiffs were unsuccessful were relatively minor and were subsumed into the entire litigation. Accordingly, plaintiffs' failure to prevail on certain claims, for one reason or another, should not result in a reduction of their counsel's hours in the context of this "reasonable fee" determination.

Coors' primarily objects to plaintiffs' fee request on the basis that the "fee multiplier" of 28.4 is excessive under any analysis or determination of a reasonable fee award in this proceeding. As noted above, plaintiffs' request for attorneys' fees in excess of 4 million dollars is premised upon a contingent fee agreement between plaintiff Globe and their counsel entered into privately and without approval of this Court or any participation by the defendant.

Plaintiffs state that the contingent fee arrangement was necessary and appropriate, because neither Globe, Globe's equity security holders, or the subsequently-appointed chapter 7 trustee could afford to hire counsel on an hourly-fee basis. Plaintiffs also note that contingent fee agreements are customary and usual in New Hampshire, and that their counsel incurred an extremely large risk of nonpayment in agreeing to represent plaintiffs on a contingent fee basis.

Plaintiffs contend that, in addition to the foregoing reasons, fairness and equity require implementation of the contingent fee arrangement by this Court, because plaintiffs' counsel underwent long and difficult litigation in this matter, because the firm presented effective, vigorous, and successful representation herein, and because the firm achieved an exceptional result such that Globe's creditors will all be paid in full with interest.

■ I agree with the points made by plaintiffs to the effect that counsel was faced with difficult issues and they did risk nonpayment of their fees. However, the fee agreement between plaintiff Globe and their counsel is a contract between those parties, and it has no binding effect upon this Court's determination of a "reasonable fee" to be paid by the losing defendant in this litigation.[5]

This case is completely different from cases such as bankruptcy estate administration cases where a fee is awarded to counsel to be paid by counsel's own client, whether that be a bankruptcy trustee or a debtor-in-possession, and where the fee to be allowed is determined pursuant to section 330 of the Bankruptcy Code. In this case, due to the award of "reasonable attorneys' fees" in the final judgment as authorized by state law covering the transactions involved, there has been a "shifting" of fees, whereby the defendant is ordered to pay fees to the plaintiffs' counsel. My prior opinions on fee enhancement issues were primarily non-fee-shifting decisions, and accordingly have no direct relevance to the award of reasonable attorneys' fees in this "fee-shifting" case.[6] It is

---

**4.** Prior to trial this Court denied plaintiffs' request for injunctive relief (1/20/89), dismissed three of plaintiffs' counts as moot (6/27/89), dismissed two of plaintiffs' counts as unsupported by the law (6/19/89), and entered summary judgment in favor of ex-defendant Capitol Distributors (1/9/90). After trial the Court held for plaintiffs on three of the original nine counts in the Complaint (5/13/91).

**5.** It is not clear on the record whether the chapter 7 trustee privately may have agreed to the contingent fee when he came into the picture.

However, it *is* clear that the Court was never asked to pass upon the matter and any such private agreement is not binding on the bankruptcy estate. It may well be that this question will be moot in any event in view of the substantial surplus which will accrue to the equity holders of the debtors in this case.

**6.** In *WVG Associates,* BK No. 83–487, slip op. (November 16, 1990), I stated that my decision in *In re Elmendorf Board Corp.,* 57 B.R. 580 (Bankr.D.N.H.1986) "was too broad to the extent that it may be read as holding that risk of

obvious that fee-shifting cases raise the unique factor in which the defendant ordered to pay the fee had no part, or any procedural mechanism, for affecting the agreement as to fees or the standards for determining an appropriate fee award. *See Venegas v. Mitchell,* 495 U.S. 82, 89–90, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74 (1990).

 The award of attorneys' fees in the final judgment is derived from New Hampshire state statutes that shift the obligation of fee payment to the losing party.[7] This fee award is contrary to the general "American rule" that each party to a lawsuit bears its own costs (and fees). *See Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Where, as here, an exception to the general rule is allowed, such exception should be implemented in a conservative fashion. Consequently, any agreement between parties other than the party ordered to pay the attorneys' fees will not be determinative of what should constitute a reasonable fee. However, the situation that such an agreement placed plaintiffs' counsel in, namely an all-or-nothing gamble on the recoupment of any attorneys' fees, deserves some consideration.

 In considering an award of "reasonable attorneys' fees" in this case, I am guided by the "lodestar" analysis and the various criteria discussed by the First Circuit Court of Appeals in fee-shifting cases

such as *Furtado v. Bishop,* 635 F.2d 915 (1st Cir.1980) (section 1983 case), *citing King v. Greenblatt,* 560 F.2d 1024 (1st Cir.1977) (section 1983 case) and *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) (Title VII case).[8] "The starting point is to calculate the 'lodestar': 'The number of hours reasonably expended multiplied by a reasonable hourly rate.' " *Furtado,* at 920, *quoting Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc).

This lodestar can then be adjusted up or down to reflect several factors, such as the contingent nature of any fee, delay in payment, exceptional (and unexpected) results obtained, and quality of representation, if such factors have not already been taken into account in computing the lodestar. *See Furtado* at 920, 924 ("The second step ... is to adjust the lodestar for factors that it does not yet include.") Specifically, the additional factors are as follows:

1. The time and labor required.

2. The novelty and difficulty of the issue.

3. The skill necessary to perform the services properly.

4. The preclusion of other employment.

5. The customary fee.

6. Whether the fee is fixed or contingent.

---

nonpayment *as the only factor involved* could justify an enhanced fee award." *Id.,* slip op. at 6 (emphasis in original). While that pronouncement still holds true in non-fee-shifting situations, such as the bankruptcy case involved in *WVG,* it is not a correct statement of the law with regard to fee-shifting cases. *See Wildman v. Lerner Stores Corp.,* 771 F.2d 605 (1st Cir. 1985).

7. *See* N.H. RSA 358–A:10 ("In addition, a prevailing plaintiff shall be awarded the costs of the suit and reasonable attorney's fees, as determined by the court.")

*See also* N.H. RSA 181:41(III) ("The prevailing party in any action under paragraph I shall be entitled to actual damages, including reasonable attorneys' fees ...")

8. As indicated above, costs and reasonable attorneys' fees were awarded in this case pursuant to state statutes. Neither the legislative histories

of these statutes nor New Hampshire case law specifically sets forth the applicable standards or method for determining the amount of reasonable attorneys' fees under these statutes. In *Rousseau v. Eshleman,* 128 N.H. 564, 571, 519 A.2d 243 (1986) (dissenting opinion), the Court noted that the New Hampshire Consumer Protection Act, N.H. RSA 358–A:13, provides that courts may be guided in applying the Act "by the interpretation and construction given ... the Federal Trade Commission Act ... by the Federal Trade Commission and the federal courts," however, because there is no private award of attorneys' fees allowed under the FTC Act, and consequently no fee decisions thereunder, "[c]ourts often look to cases decided under the antitrust laws...." The so-called "lodestar method" for determining reasonable attorneys' fees in a fee-shifting situation has been used by the New Hampshire Supreme Court in a civil rights case. *See Scheele v. Village District of Edelweiss,* 122 N.H. 1015, 453 A.2d 1281 (1982).

7. Time limitations imposed by the client or circumstances.

8. The amounts involved and the results obtained.

9. The experience, reputation and ability of the applicant.

10. The "undesirability" of the case.

11. The nature and length of the professional relationship with the client.

12. Awards in similar cases.

*See* S.Rep. No. 1011, 94th Cong., 2d Sess. 6 *reprinted in* [1976] U.S.Code Cong. & Admin.News 5908, 5913; H.Rep. No. 1558, 94th Cong., 2d Sess. 8 (1976) (approving 12 factors used in calculating fee award); *Furtado v. Bishop*, 635 F.2d 915 (1st Cir. 1980); *King v. Greenblatt*, 560 F.2d 1024 (1st Cir.1977); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These criteria are similar to those in the ABA Code of Professional Responsibility [9] and the New Hampshire Rules of Professional Conduct.[10] Many of the factors set forth above are generally incorporated into the lodestar analysis.[11] Nevertheless, the considerations set forth in numbers 2, 3, and 6 above may justify an enhancement of the lodestar amount in this case in determining a "reasonable" fee.

Subsequent to the First Circuit opinion in *Furtado*, the Supreme Court of the United States set out certain principles regarding when a "bonus" or "premium" may be allowed over a fee calculated at reasonable hourly rates. *See Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). *Blum* was in fact a fee-shifting case, i.e., a fee decision under the civil rights statute, 42 U.S.C. § 1983, and its companion fee statute, 42 U.S.C. § 1988. The Supreme Court reversed the lower courts' award of an upward adjustment of the lodestar, or a "bonus fee", primarily on the grounds that the lower courts had made no detailed findings that would justify such an upward adjustment. The Supreme Court commented generally on upward adjustments of fee awards, stating that " '[T]he product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of the statute ... [although] 'in some cases of exceptional success an enhanced award may be justified.' " *Id.* at 897, 104 S.Ct. at 1548, *quoting Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). However, the Supreme Court held that "Neither complexity nor novelty of the issues ... is an appropriate factor in determining whether to increase the basic fee award." *Id.* 465 U.S. at 898–99, 104 S.Ct. at 1549. The Court reasoned that whatever work was required by the issues would be fully reflected in the number of billable hours recorded and that 'quality of representation' is generally reflected in the reasonable hourly rate. *Id.* at 899, 104 S.Ct. at 1549.

In *Blum*, the Supreme Court left open the consideration whether the risk of nonpayment, due to a plaintiff's failure to be the prevailing party within section 1983 litigation, should be a factor in awarding an upward adjustment of an attorney's fee. *Id.* at 901, n. 17, 104 S.Ct. at 1550 n. 17. The First Circuit Court of Appeals answered this question in *Wildman v. Lerner Stores Corporation*, 771 F.2d 605 (1st Cir. 1985). In *Wildman* the prevailing party in an age discrimination lawsuit—again a fee-shifting situation—was awarded attorneys' fees by the lower court, including an increase of 50% on the 'lodestar' amount due to the unusual difficulties presented by the prosecution of that case, and due to the plaintiff attorneys' "contingency of losing all their time and effort." *Id.* at 610. The Court of Appeals noted that "upward adjustments for quality of representation after *Blum* 'are to be few and far between.' "

**9.** *See* Ethical Consideration 2–18 and Disciplinary Rule 2–106(B).

**10.** *See* Rule 1.5.

**11.** *Cf. Furtado* at 920, 924, *citing Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 583, n. 15 (5th Cir.1980) ("This approach recognizes that commenting on the twelve factors ... may not in any real sense contribute to the rational setting of a fee; the comments are imprecise and the items overlap.... We view this step as a residual category that is relevant only when the parties point out factors that do not easily fit into the initial calculation of the lodestar.")

*Id.* at 610, *quoting Garrity v. Sununu,* 752 F.2d 727, 739 (1st Cir.1984).

Most importantly, however, the Court of Appeals in *Wildman* addressed the question as to upward fee adjustments for the risk of nonpayment, and determined that in the First Circuit fee risk would justify a multiplier or upward adjustment:

We now turn to the question of whether a multiplier can be justified solely because of the contingent nature of the action. In *Blum* the attorney was not working on a contingency basis and the majority opinion, while noting the contingency issue, explicitly did not decide the propriety of adjusting the lodestar figure upward to encourage attorneys to take cases that involve a risk of nonpayment.

\* \* \* \* \* \*

While the lodestar calculation may reflect the difficulty of the resolution of the issues involved in a case, ... the lodestar figure alone does not differentiate between the case taken on a full retainer and a case in which an attorney spends many hours over a period of months or years with no assurance of any pay if the suit is unsuccessful. Even if the client ultimately prevails, the burden of supporting salaried employees and fixed costs during the course of the contingent litigation can be substantial.

In addition to the risk of not recovering fees from the adverse party, the contingent-fee attorney may incur substantial expenses in the preparation and litigation of the action for everything from travel and transcript expenses to expert witness fees. Moreover, the attorney may face a second risk once his client has prevailed—that the court will find some of his time duplicative, unnecessary, or inefficiently expended.... To deny all consideration of the added burden and additional risks an attorney under a con-

tingent fee agreement may have to bear does not strike us as "reasonable."

\* \* \* \* \* \*

[W]e believe that adjustment of the lodestar figure, after examining the particular risks assumed by an attorney in a particular case, may be necessary in order to provide the "reasonable attorney fee".... Of course, it is the actual risks or burdens that are borne by the lawyer or lawyers that determine whether an upward adjustment is called for, not the mere fact that the case was taken on a contingent basis.

*Id.* at 610, 611–13. The *Wildman* court remarked upon the range of fee multipliers that have been awarded in fee-shifting cases:

"... [N]o multipliers approaching this have ever been awarded in any section 1988 petition, or in any other attorney fee award case. In fact, the cases in which multiples of two have been awarded are unusual, even in complex litigation. While multiples of 2, 3, 4, and 4.5 have occasionally been given, these multipliers occur primarily in protracted multidistrict antitrust and securities cases involving recoveries of ten million dollars or more. In the area of civil rights litigation where upward adjustments are much more modest, a survey of the reported cases shows that a multiplier of two has been given only three times in the last five years. A multiplier of more than two has not been used at all."

*Id.* at 613 (citations omitted). The court then remanded the case for specific determination as to what multiplier, if any, was justified solely on the basis of the contingent nature of the case. *Id.* at 616.[12]

Subsequently, the Supreme Court rendered a plurality decision reversing a lower court's award of enhanced fees under the

---

12. In making its decision, the district court should examine the risks undertaken by each attorney separately and consider: 1. what, if any, payment each attorney would have received had the suit not been successful; 2. what, if any, costs or expenses each attorney would have incurred if the case had been lost; 3. whether, after the successful verdict, Nachman

and Moreno were completely dependent upon the court for their fees; 4. the length of time and number of hours the case consumed during which Nachman was required to compensate his associates and carry his overhead expenses without assurance of compensation; and 5. whether other attorneys refused to take the case because of a risk of nonpayment.

735

Clean Air Act [13], a federal fee-shifting statute using a "reasonable attorneys' fee" standard. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (plurality and concurring opinions). In this decision, the plurality of four justices considered "whether, when a plaintiff prevails, its attorney should or may be awarded separate compensation for assuming the risk of not being paid." *Id.* at 715, 107 S.Ct. at 3081. The plurality further noted that the "risk is measured by the risk of losing rather than winning and depends on how unsettled the applicable law is with respect to the issues posed by the case and by how likely it is that the facts could be decided against the complainant." *Id.* at 715–16, 107 S.Ct. at 3081. After a lengthy analysis of the varying holdings in the Circuit Courts and a review of bar and legal commentators on the subject, the plurality would have held that "multipliers or other enhancement of a reasonable lodestar fee to compensate for assuming the risk of loss is impermissible under the usual fee-shifting statutes." *Id.* at 727, 107 S.Ct. at 3088. Four dissenting justices disagreed on this point. Justice O'Connor concurred in the judgment reversing the decision below but would have agreed that if certain factors had been properly developed the risk of non-payment in an appropriate case could justify enhancement. *Id.* at 731, 107 S.Ct. at 3089 (Justice O'Connor, concurring in part and concurring in the judgment).

■ In accordance with the foregoing law of the First Circuit and the Supreme Court, developed specifically in fee-shifting cases, I find that plaintiffs request, in effect, for a fee multiplier of 28.4 times the base lodestar amount is extraordinary and out of the question in this case. *See Wildman*, supra, at page 735. None of the case law to date allowing increases in the lodestar reasonable fee amount in a fee shifting case comes anywhere close to such a multiplier. As *Wildman* indicates, it is unusual to even see a multiplier of 2 times the lodestar amount. Although risk of nonpayment is a cognizable factor in upward adjustments of reasonable fee awards, it could not approach a multiplier of this magnitude in the fee-shifting situation.

■ However, I do believe that the risk of nonpayment deserves some multiplier or upward adjustment in this case, because neither the debtor nor the bankruptcy estate had any substantial assets to fund the litigation of this adversary proceeding, as indicated by the record. In addition, the plaintiffs clearly have established that there were no other attorneys realistically who would have wanted to take this case over on anything but a contingent fee basis at the outset. Further, since I denied the plaintiffs' request for injunctive relief at the onset of this bankruptcy case, this litigation was clearly a "long-shot". In the circumstances presented herein, I believe a multiplier of two is reasonable. *Cf. In re Churchfield Management & In. Corp.*, 98 B.R. 838, 856 (Bankr.N.D.Ill.1989) ("[A] doubling of the lodestar would provide a proper ceiling in a case where recovery by counsel was wholly contingent.") Therefore the reasonable fee to be paid plaintiffs' counsel by defendant shall be $148,174 times two, for total reasonable attorneys' fee in the amount of $296,348.

■ I do not believe that the novelty of the issues factor nor the exceptional skill factor justify an upward adjustment or enhancement of attorneys' fees in this case. These factors are generally incorporated into the lodestar determination of a reasonable amount of time spent on a matter and reasonable hourly rates, and therefore are not appropriate factors in determining whether to increase a basic fee award. *See Blum v. Stenson*, 465 U.S. 886, 898–899, 104 S.Ct. 1541, 1548–1549, 79 L.Ed.2d 891 (1984); *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 610 (1st Cir. 1985).

Only in the most extraordinary, unusual, rare, or exceptional instances do these fac-

---

**13.** The award of "reasonable attorneys' fees" is set forth in section 304(d) of the Clean Air Act, 42 U.S.C. § 7604(d).

tors justify an enhancement of the attorneys' fee award. I do not find such circumstances in this case. The issue that plaintiffs claim to be novel—primarily, whether the Consumer Protection Act is applicable in a situation where there is another comprehensive statutory scheme involved—was addressed by the U.S. District Court of New Hampshire in 1986 in *WVG v. Pacific Ins. Co.*, 707 F.Supp. 70 (1986) and by the New Hampshire Supreme Court, also in 1986, in *Rousseau v. Eshleman*, 128 N.H. 564, 519 A.2d 243 (1986). In addition, the "exceptional skills" factor requires actions that are rare and beyond what is expectable from the hourly rates charged, and I find that the hourly rates sufficiently encompass the attorneys' skills in this proceeding.

▆▆▆ This determination of reasonable attorneys' fees to be paid by the defendant Coors to counsel for the plaintiffs has no bearing on what fees, if any, counsel for plaintiff Globe may be paid by its own client under the contractual agreement and obligation entered into between plaintiff Globe and their attorneys in the event the distribution in the bankruptcy estate leaves, as is likely, a substantial surplus for the equity holders after full payment to creditors.

## Conclusion

Plaintiffs' counsel are found to have expended 1,376 hours in handling this adversary litigation, which at their hourly rates presents a basic lodestar amount of $148,174. The law firm is entitled to a multiplier of two in the circumstances of this adversary proceeding, which presents a reasonable fee award in the amount of $296,348 for all services up to, but not including, services during the pending appeal.

Defendant Coors Company shall pay the law firm of Wadleigh, Starr, Peters, Dunn & Chiesa, counsel for plaintiff Globe Distributing Co., Inc. and plaintiff Dennis Bezanson, Trustee, $296,348 in fees and $2,536.11 in expenses, for a total amount of $298,884.11.

DONE and ORDERED.

## ON MOTION TO RECONSIDER ATTORNEYS' FEES

This adversary proceeding was tried before the Court for the week of October 15 to October 19, 1990, resulting in a final judgment for plaintiffs, entered on May 13, 1991. As part of the judgment, the Court awarded "reasonable attorneys' fees and costs", which the Court subsequently determined in an "Order and Memorandum Opinion" dated May 27, 1992.

Presently before the Court is a "Motion for Reconsideration of Order Regarding Attorney's Fees", filed by Globe Distributors, Incorporated (hereinafter "Globe") and Dennis Bezanson, Trustee, and the Objection thereto, filed by Adolph Coors Company (hereinafter "Coors"). The Court heard oral argument on this matter on June 23, 1992, but only with regard to reconsideration of the issue whether New Hampshire caselaw would justify a larger multiplier in fee-shifting cases, and reconsideration of the issue whether any such New Hampshire law is determinative in this adversary proceeding. For the reasons set forth below, the motion for reconsideration is denied.

The issue before the Court for reconsideration is how much of a multiplier is justified under New Hampshire law when "reasonable attorneys' fees" have been awarded pursuant to a fee-shifting statute, (Consumer Protection Act, N.H. RSA 358–A:10), when only one fee enhancement factor (the risk of non-payment) is applicable, and when the prevailing party has a contingent fee agreement with its attorney.

Globe, the prevailing party, has essentially requested a multiplier of 28 times the "lodestar" fee (reasonable hourly rates multiplied by reasonable hours expended), by requesting that it be awarded fees in accordance with the contingent fee agreement between Globe and its attorneys, which provided that Globe's attorneys would receive one third (33⅓%) of any recovery.

This Court allowed a multiplier of two times over the "lodestar" amount as an appropriate adjustment to reach a "reason-

able fee" determination taking into account both the risk of non-payment, the only fee enhancement factor that this Court found applicable in this case, and also the countervailing consideration that this is a fee-shifting case. As discussed in the Memorandum Opinion, multipliers of two are rare in fee-shifting cases, and two is the highest multiplier that has been awarded in federal cases.

Globe wants a larger fee multiplier, and argues that the Court should give more weight to the contingent fee agreement because it would be given more weight under New Hampshire law. Globe further contends that the contingent fee agreement should be given more weight because the chapter 7 trustee and Alphonse Vitale agreed that Vitale/Globe would pay on a contingency basis, because Globe would not have been able to obtain any other attorneys to represent it at that time in those circumstances in that market, and because the risk of non-recovery and the heavy investment of time and effort justify imposition of the full 33⅓ fee agreement upon defendant Coors.

I recognize, as I did in my prior Order and Memorandum Opinion dated May 27, 1992, that New Hampshire law is determinative of what would constitute "reasonable attorneys' fees", because the fee award was made pursuant to New Hampshire law, specifically the New Hampshire Consumer Protection Statute, N.H. RSA 358–A. However, as I stated in the memorandum opinion, neither the legislative history of the statute nor New Hampshire case law specifically sets forth the applicable standards or method for determining the amount of reasonable attorneys' fees under the Consumer Protection Act.

 Although the New Hampshire Court has considered "reasonable attorneys' fees" in fee-shifting cases, in the workers' compensation context, it has never determined "reasonable attorneys' fees" under the Consumer Protection Act. The Consumer Protection Act, however, provides that courts may be guided in their analyses of the Act by reference to decisions under the federal Consumer Protec-

tion Act, 15 U.S.C. § 45(a)(1). *See* N.H. RSA 358–A:13. Since there is no private award of attorneys' fees allowed under the federal Consumer Protection Act, and consequently no fee decisions thereunder, "[c]ourts often look to cases decided under the antitrust laws...." *Rousseau v. Eshleman*, 128 N.H. 564, 571, 519 A.2d 243 (1986) (dissenting opinion). Accordingly, both New Hampshire statutory law and New Hampshire caselaw has permitted, if not directed, this Court to review federal caselaw in determining issues under the New Hampshire Consumer Protection Act.

The New Hampshire Supreme Court has looked to the New Hampshire Rules of Professional Conduct, and particularly Rule 1.5, in deciding what constitutes "reasonable attorneys' fees" in fee-shifting scenarios. *See e.g. Cheshire Toyota/Volvo, Inc. v. O'Sullivan*, 132 N.H. 168, 562 A.2d 788 (1989) ("Courts determine the reasonableness of fees by examining the Rule 1.5(a) factors."), *citing Corson v. Brown Products, Inc.*, 120 N.H. 665, 667, 421 A.2d 1005 (1980), and *Couture v. Mammoth Groceries, Inc.*, 117 N.H. 294, 296, 371 A.2d 1184 (1977). As I wrote in the prior opinion on attorneys' fees in this case, the criteria used by the federal courts in determining "reasonable" attorneys' fees under the "lodestar" method are similar, if not identical, to the factors set forth in the New Hampshire Rules of Professional Conduct. The New Hampshire Supreme Court has itself used the so-called "lodestar method" for determining reasonable attorneys' fees in a fee-shifting situation, a civil rights case, as noted in the prior memorandum opinion. *See Order and Memorandum Opinion*, p. 8, n. 8, (May 27, 1992), referring to *Scheele v. Village District of Edelweiss*, 122 N.H. 1015, 453 A.2d 1281 (1982).

The New Hampshire Supreme Court clearly has held that a contingency fee agreement is *not* legally binding upon the non-prevailing party in a fee-shifting situation such as this case. In *Cheshire Toyota/Volvo, Inc. v. O'Sullivan*, 132 N.H. 168, 562 A.2d 788 (1989), the Court considered whether the trial court had properly applied the law governing fee arrangements

by setting a fee using the factors listed in Rule 1.5(a) of the New Hampshire Rules of Professional Conduct. The defendant had been awarded reasonable attorneys' fees for successfully defending a workers' compensation case, and defendant appealed because the trial court disregarded the contingent fee arrangement. The New Hampshire Supreme Court, affirming the trial court's determination of a reasonable fee, held that:

> Fee arrangements between an attorney and his client, however, do not dictate the amount of attorneys' fees recoverable under [the workers' compensation law.] On the contrary, we have interpreted the statute to allow the court to exercise its discretion in determining a reasonable fee; the statute does not restrict the court's role to that of wielding a rubber stamp. As a result, the fee arrangement between an attorney and his client is but one of a number of factors for a court to consider in determining a reasonable fee. The defendant's contingent fee arrangement with her attorney did not bind the court.

*Cheshire Toyota/Volvo, Inc. v. O'Sullivan,* 132 N.H. 168, 171, 562 A.2d 788 (1989) (citations omitted); *see also Corson v. Brown Products, Inc.,* 120 N.H. 665, 421 A.2d 1005 (1980) ("We expressly reject the plaintiff's counsel's suggestion that the contingent fee arrangement which he entered into with his client controls the amount of recoverable attorney's fees.... [T]he contingent fee agreement does not bind any of the parties.")

In some fee-shifting cases, the New Hampshire Supreme Court did allow a total *dollar amount* of fees which approximated the amount of the contingent fee requested. *See e.g. Cheshire Toyota/Volvo, Inc. v. O'Sullivan,* 132 N.H. 168, 562 A.2d 788 (1989) (A workers' compensation case in which the attorney for the successful claimant was allowed a fee equal to one-fourth of the total benefits awarded.); *Couture v. Mammoth Groceries,* 117 N.H. 294, 371 A.2d 1184 (1977) (A workers' compensation case in which the attorney for the successful claimant was allowed a fee equal to one-third of the total benefits awarded.).

However, such fees were allowed expressly upon a determination that, when all relevant reasonable fee factors were considered, such *dollar amount* was in fact a "reasonable fee" in the circumstances. For example, in *Couture, supra,* the Court determined that the trial court's fee award was not erroneous, because the Court could not say that the fee award was "clearly excessive".

Unfortunately, none of the reported decisions of the New Hampshire Supreme Court indicate what 'lodestar' amount was involved in the case, and therefore it is impossible for me to determine from the reported New Hampshire decisions what "multiplier" of the 'lodestar' fee, if any, was used in each case. Notwithstanding this absence of 'lodestar' and "multiplier" analysis, it is my opinion and judgment that the New Hampshire Supreme Court would not approve the 28 multiplier requested in this case, or any comparable case, and would tend to follow the decisions of the federal courts in fee-shifting situations, as it has done in the past. *See Scheele v. Village District of Edelweiss,* 122 N.H. 1015, 1020, 453 A.2d 1281 (1982), *citing Furtado v. Bishop,* 635 F.2d 915, 919–20 (1st Cir.1980) ("In calculating the award of attorney's hourly fees in section 1983 actions, we choose to have our courts follow the "lodestar" approach adopted by the First Circuit.")

Accordingly, this Court adheres to its prior ruling in which a multiplier of two was determined to be a "reasonable fee" that was appropriate in this fee-shifting case.[1]

DONE and ORDERED.

---

**1.** If this Court's Order is appealed, the parties have available the option of requesting the Unit-

United States District Court,
D. Puerto Rico.

ed States District Court to certify the issues involved to the New Hampshire Supreme Court, as permitted by Procedural Rule 34 of the Rules of the Supreme Court of New Hampshire.