In re Gervais H. VAILLANCOURT d/b/a
Liberty Plumbing & Heating Co. and
Polly D. Vaillancourt, Debtors.

Gervais H. Vaillancourt d/b/a Liberty
Plumbing & Heating Co.,
Movant,

v.

The Granite Group f/k/a Capitol
Plumbing & Heating Supply
Co., Inc., Respondent.

Bankruptcy No. 00–13474–JMD.
CM No. 01–76.

United States Bankruptcy Court,
D. New Hampshire.

March 16, 2001.

Grenville Clark III, Gray, Wendell & Clark, P.C., Manchester, NH, for Debtor/Movant.

Frank P. Spinella, Jr., Hall, Morse, Anderson, Miller & Spinella, P.C., Concord, NH, for Respondent.

Geraldine Karonis, Office of U.S. Trustee, Manchester, NH, for U.S. Trustee.

Jeffrey Schreiber, Schreiber & Assoc., Danvers, MA, Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER

J. MICHAEL DEASY, Bankruptcy Judge.

### I. INTRODUCTION

The Court has before it a motion filed by Gervais H. Vaillancourt d/b/a Liberty Plumbing & Heating Co. (the "Debtor") seeking to avoid pursuant to 11 U.S.C. § 522(f) an attachment lien held by The Granite Group f/k/a Capitol Plumbing & Heating Supply Co., Inc. ("Granite Group") as impairing the exemptions the Debtor claimed in his home. Granite

Group filed an objection to the motion on the grounds that (1) the Debtor cannot use the state "wild card exemption" under RSA 511:2(XVIII) to exempt any portion of his homestead as that exemption is applicable only to personal property; and (2) the Debtor's property is worth more than the amount stated in the motion and therefore value exists to support a portion of Granite Group's lien thus prohibiting the avoidance of the lien in its entirety under the Bankruptcy Code.[1] If the Debtor cannot use the state wild card exemption in addition to his state homestead exemption, Granite Group's lien would only be partially avoided.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### II. BACKGROUND

On October 7, 1999, Granite Group obtained an attachment lien of $5,000.00 against the Debtor's residence located in Manchester, New Hampshire and some of the Debtor's personal property. On December 18, 2000, the Debtor filed a Chapter 7 bankruptcy petition. The Debtor listed the value of his home as $153,000.00 in Schedule A. His undivided one-half interest in the real estate is $76,500.00. In Schedule C, the Debtor made the election under section 522(b)(2) of the Bankruptcy Code to use the so-called state exemptions. Pursuant to that election the Debtor claimed two exemptions in his personal

---

1. At the hearing Granite Group withdrew the second ground for its objection and is no longer pursuing the valuation issue.

residence: (1) a homestead exemption of $30,000.00 pursuant to RSA 480; and (2) a wild card exemption of $3,344.24 pursuant to RSA 511:2(XVIII).[2] On February 7, 2001, the Debtor filed a motion seeking to avoid Granite Group's attachment lien as impairing the exemptions in his homestead and the exemptions in several of the Debtor's automobiles. On February 12, 2001, Granite Group filed an objection to the motion to the extent that the Debtor sought to avoid Granite Group's lien on the Debtor's homestead.[3] The Court held a hearing on the matter on March 8, 2001 and took the matter under advisement.

## III. DISCUSSION

■ The legal issue in this case is whether the Debtor may use the wild card exemption under RSA 511:2(XVIII) in addition to the homestead exemption to increase the exemption available for his homestead property.[4] RSA 511:2(XVIII) provides as follows:

The following goods and property are exempted from attachment and execution:

. . .

XVIII. The debtor's interest in any property, not to exceed $1,000 in value, plus up to $7,000 of any unused amount of the exemptions provided under paragraphs III, VI, VIII, IX, XVI, and XVII of this section.

RSA 511:2(XVIII). Granite Group argues that the Debtor is not entitled to use the wild card exemption to exempt any portion of his homestead because RSA 511:2 is wholly concerned with exemptions in personalty not realty. See, e.g., RSA 511:2(I) (exempting wearing apparel); RSA 511:2(III) (exempting household furniture); RSA 511:2(VIII) (exempting books); RSA 511:2(IX) (exempting tool's of the debtor's occupation); RSA 511:2(XVI) (exempting one automobile); and RSA 511:2(XVII) (exempting jewelry). According to Granite Group, the wild card exemption cannot be applied to real property; rather, the only basis for an exemption in homestead property is RSA 480:1 which provides in relevant part that "[e]very person is entitled to $30,000 worth of his homestead, or of his interest therein, as a homestead." Granite Group contends that the Court should look to the entire exemption scheme in New Hampshire, see A.B.C. Builders, Inc. v. American Mut. Ins. Co., 139 N.H. 745, 748, 661 A.2d 1187 (1995) (indicating that the term property may vary depending upon the context in which it is to be applied), and conclude that "any property" does not include real property because RSA 511:2 deals exclusively with personal property.

In response, the Debtor argues that RSA 511:2(XVIII) should be construed according to its plain meaning. See Town of

2. Schedule C actually lists an amount of $7,688.47 for the wild card exemption. The Debtor claims half of the exemption or $3,844.24. He attributes the other half to his co-debtor spouse.

3. The Court notes that while Granite Group has not filed a formal objection to the Debtor's use of RSA 511:2(XVIII) to exempt a portion of his homestead, Granite Group's objection was filed within the time prescribed by the federal bankruptcy rules. See Fed. R. Bankr.P. 4003(b) (stating that objections to claimed exemptions must be filed within thir-

ty days after the first meeting of creditors is concluded).

4. To the extent that Granite Group is objecting to the Debtor's claim of exemption, the Court notes that Granite Group, as the objecting party, has the burden of proving that the Debtor's exemption was not properly claimed. See Fed. R. Bankr.P. 4003(c) ("In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.").

*Tilton v. State,* 137 N.H. 463, 465, 629 A.2d 791 (1993) ("[W]e look first to the statutory language itself . . . and construe the law in a manner consistent with its plain meaning. . . . To divine the intent of a statute, we determine its meaning from its construction as a whole, not by examining isolated words and phrases."). The Debtor argues that the reference in the wild card exemption to "any property" is clear on its face and includes both personal property and real property.

 Both the Debtor and Granite Group agree that this is an issue of first impression as neither the New Hampshire Supreme Court nor this Court has interpreted the scope of the wild card exemption and whether it is applicable to real property. In determining the scope of state law exemptions in the context of a federal bankruptcy case, the Court must look to the federal purposes of the Bankruptcy Code. *See Bartlett v. Giguere (In re Bartlett),* 168 B.R. 488, 494 (Bankr. D.N.H.1994) ("[E]xemption[s] . . . under the Bankruptcy Code can and should be determined in terms of *federal* purposes in the enactment of the bankruptcy laws, although the federal courts should consider state case decisions on the issue, when available, as informative and perhaps persuasive when not in conflict with federal purposes under bankruptcy law."). One of the main goals of federal bankruptcy law is to rehabilitate debtors and to provide them with a "fresh start." *Id.* at 493–94. In order to promote that purpose, courts have liberally construed exemptions in favor of the debtor. *See id.* at 494.

 Given the above guidance on how to interpret state law exemptions in the context of a bankruptcy case, the Court holds that debtors may use New Hampshire's wild card exemption to exempt real estate, including homestead property, as a plain language reading of RSA 511:2(XVI-II) requires the Court to find that the term "any property" refers to all types of property, including real property. Support for the Court's holding can be found in *In re Christie,* 139 B.R. 612 (Bankr. D.Vt.1992), a bankruptcy case from the District of Vermont where the court held that the phrase "any property," as used in the Vermont wild card exemption, was broad enough to include both personal and real property. In that case, the state wild card exemption appeared in the personal property subchapter of Vermont's exemption statute. *See id.* at 612 (indicating that the exemption was found in "Title 12 of the Vermont Statutes Annotated, Chapter 11, Levy of Exemption, Subchapter 2, Personal Property, Levy and Sale, Section 2740, Goods and chattels; exemptions from attachment and execution"). After examining both state and federal case law, the court determined that "a narrow construction of the words 'any property', without clear authorization in the statute, would deprive a debtor of a significant right and would be at odds with the Code's and Vermont's intent to provide a debtor with a fresh start." *Id.* at 615. The court held that the words "any property" mean just that "any property." *Id.*

The Court notes that other courts, in addition to the Vermont bankruptcy court, have broadly construed the term "any property" found both in state and federal wild card exemptions. *See In re Miller,* 198 B.R. 500, 504 (Bankr.N.D.Ohio 1996) (citing numerous cases for the proposition that courts interpreting federal and other state wild card exemptions have refused to restrict the term "any property" and have applied it in a wide variety of situations). *See also In re Hilbert,* 12 B.R. 434, 436 (Bankr.E.D.Pa.1981) (concluding that Congress intended the phrase "any property" in section 522(d)(5) of the Bankruptcy Code to mean any property of the estate

including real property owned by the debtor). Other courts have also avoided judicial liens under section 522(f) of the Bankruptcy Code as impairing a debtor's state wild card exemption. *See Miller,* 198 B.R. at 504–05 (holding that the debtor may avoid the judicial lien on his real property as impairing his Ohio wild card exemption); *In re Shells,* 171 B.R. 816, 818 (Bankr.S.D.Ohio 1994) (allowing debtors to use their state wild card exemption in addition to their homestead exemption to avoid a lien on their homestead property).

■ The Court further notes that the New Hampshire wild card exemption was enacted in 1996 at the same time the legislature repealed RSA 511:2–a, which pursuant to section 522(b)(1) of the Bankruptcy Code had prohibited debtors from claiming the federal bankruptcy exemptions available under section 522(d). *See* Act of May 24, 1996, 1996 N.H. Laws ch. 151 (H.B. 1488). As a result of the repeal of RSA 511:2–a, debtors in this state were given the opportunity to claim federal exemptions in their bankruptcy case. The timing of the amendments to RSA 511 in 1996 leads the Court to conclude that the New Hampshire legislature added the state wild card exemption in RSA 511:2 in order to provide state exemptions on a similar level with the federal exemptions. The federal exemptions include a wild card exemption which the courts have found is applicable to real property. *See* 11 U.S.C. § 522(d)(5); *Hilbert,* 12 B.R. at 436. For that additional reason, the Court finds the New Hampshire wild card exemption may be applied to real property.

Granite Group also argues that even if the state wild card exemption applies to real property in general, it cannot be used to increase a debtor's exemption in homestead property under a plain reading of RSA 480. Specifically Granite Group claims that the plain language of RSA 480:4 limits any exemption in homestead property to the $30,000.00 homestead right provided under RSA 480:1. RSA 480:4 provides:

> The homestead right is exempt from attachment during its continuance from levy or sale on execution, and from liability to be encumbered or taken for the payment of debts, except in the following cases:
>
> I. In the collection of taxes;
>
> II. In the enforcement of liens of mechanics and others for debts created in the construction, repair or improvement of the homestead;
>
> III. In the enforcement of mortgages which are made a charge thereon according to law;
>
> IV. In the levy of executions as provided in this chapter.

RSA 480:4.

The simple answer to this argument is that RSA 480:4 by its terms applies only to the homestead exemption, not any other exemption. Granite Group's argument appears to assume that the Debtor is using the wild card exemption to augment the homestead exemption provided under RSA 480:1. However, the Debtor is not changing the amount of his homestead exemption, he is simply applying two separate exemptions, the homestead and the wild card exemptions, against the same asset. Accordingly, the only question is whether some provision of the Bankruptcy Code or applicable state law prevents the Debtor from "stacking" the wild card exemption on top of another exemption. Granite Group has not cited any statutory or other authority other than RSA 480:4. The plain language of RSA 480:4 imposes limitations on the use of the homestead exemption created under RSA 480, but does not apply to any other exemption created under any other law.

 

Both the plain language of section 522(d)(5) and its legislative history reflect a Congressional intent that the federal wild card exemption apply to all types of property, not just the types described in section 522(d). *See In re LaFlamme,* 14 B.R. 21 (1st Cir. BAP 1981). The rationale of the decision in *LaFlamme* compels a conclusion, at least in this circuit, that the federal wild card exemption may be combined or stacked with other exemptions to protect any type of property. *See Brennan v. Ted Arnold Indus., Inc. (In re Brennan),* 18 B.R. 312 (Bankr.D.R.I.1982). The language of the state wild card exemption in RSA 511:2(XVIII) is substantively identical to the federal wild card exemption in section 522(d)(5) of the Bankruptcy Code. Accordingly, applying the above analysis, the Court concludes that the state wild card exemption may be stacked with other applicable exemptions on any property in order to provide debtors with an additional amount which they can use to exempt "any property" that is not otherwise exempt. Such property may include property for which no other exemption is available as well as property which may be partially exempt under other provisions of applicable non-bankruptcy law.

## IV. CONCLUSION AND ORDER

Because the Debtor may use the wild card exemption of RSA 511:2(XVIII) to exempt a portion of his homestead, the Court finds that the Debtor has properly claimed an exemption of $30,000.00 pursuant to RSA 480:1 and an exemption of $3,844.24 pursuant to RSA 511:2(XVIII). In accordance with the formula set forth in section 522(f) of the Bankruptcy Code, Granite Group's lien in the amount of $5,000.00 can be avoided in its entirety. Therefore, the Court hereby grants the Debtor's motion to avoid Granite Group's lien.[5] This opinion and order constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

---

5. To the extent that the Debtor also sought to avoid Granite Group's lien as impairing the Debtor's exemptions in various automobiles, the Debtor's motion is granted and the lien is so avoided. The Court notes that Granite Group did not object to the avoidance of its lien on these vehicles.