**In re Vijay V. VARANASI, Joetta J. Varanasi, Debtor(s).**

No. 06–50143.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 27, 2008.

Joetta J Varanasi, Cambridge, OH, Stephen C Heine, Heine and Ferguson, Cambridge, OH, for debtor.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION ON TRUSTEE'S OBJECTION TO EXEMPTION

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for hearing upon the Objection to Debtors' Claim of Exemptions (Doc. 23) filed by Chapter 7 Trustee, and the Debtors' Reply thereto (Doc. 27). Present at the hearing were Brent A. Stubbins, Trustee and counsel for the Trustee, Stephen Heine, counsel for Debtors, and debtors Vijay V. Varanasi and Joetta J. Varanasi (hereinafter "Debtors").

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(B).

Debtors filed their case in the Southern District of Ohio, and claimed an exemption in certain residential real estate under New Hampshire state law pursuant to 11 U.S.C. § 522(b)(3). The Trustee objects to Debtors' exemption under New Hampshire law, arguing that 11 U.S.C. § 522(b)(3), which allows Debtors to claim an exemption under New Hampshire law rather than Ohio law in this case, is unconstitutional.

### I. FINDINGS OF FACT

The facts germane to resolution of this matter are not in dispute: On January 22,

1979, Debtors purchased residential property located at 9346 Ruth Lane, Cambridge, Ohio. Debtors lived there until November, 1983, then moved to New Hampshire where Mr. Varanasi (the Debtor–Husband) accepted a position as a software engineer. Though Debtors moved to New Hampshire and purchased a residence there, they retained the property in Cambridge, Ohio and rented it to tenants while they lived in New Hampshire. In 2002, Mr. Varanasi was laid off from his place of employment. Debtors sold their New Hampshire home and lived off the proceeds while Mr. Varanasi continued to seek new employment in New Hampshire. Ultimately, failing to secure a new position, Debtors moved back to the property in Cambridge, Ohio in July 2004.

In Ohio, Mr. Varanasi began working for Lear Electric on a production line. Debtors filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on January 17, 2006 in the Southern District of Ohio. Mrs. Varanasi is an approved substitute teacher, but is unable to teach due to her health. On March 27, 2006, the Debtors converted their case to Chapter 7, because of unforeseen and involuntary changes in Mr. Varanasi's work schedule which resulted in a significant decrease in his income. The Chapter 7 First Meeting of Creditors was held on April 26, 2006.

The value of the Cambridge residence is approximately $50,000, and the Debtors own it free and clear of any liens. In their Schedules, the Debtors listed unsecured creditors with claims totaling approximately $68,000. Debtors have claimed their Cambridge property wholly exempt under the New Hampshire homestead exemption. If they were eligible for and claimed the applicable Ohio exemptions, which allows a homestead exemption of $5,000 per person,[1] the residence would be subject to the Trustee's administration, which could render up to $40,000.00 for the benefit of the creditors of the estate. Thus, the impact of the selection of the New Hampshire exemptions is to deplete the potential assets of the bankruptcy estate by that amount.

## II. ARGUMENTS OF THE PARTIES

The Trustee does not dispute that Debtors correctly applied § 522(b)(3)(A) to determine applicable exemption laws. The Trustee asserts that 11 U.S.C. § 522(b)(3)(A) violates the equal protection and due process rights of creditors, and is hence unconstitutional. Specifically, the Trustee argues, § 522(b)(2) allows Ohio to "opt out" of the federal exemption scheme, craft its own exemption scheme, and apply that scheme to Ohio residents,[2] then § 522(b)(3)(A) essentially obviates that right by impairing Ohio's decision to "opt out" of the federal exemptions if the resident has lived in Ohio for less than 730 days before the date the debtor files for bankruptcy. This, according to the Trustee, results in an unconstitutional taking prohibited by the Fifth Amendment of the

---

1. O.R.C. § 2329.66(A)(1).

2. Pursuant to O.R.C. § 2329.662, the state of Ohio has elected to prohibit use of the federal exemption scheme by Ohio residents, which is commonly referred to as "opting out." Accordingly, a debtor who is domiciled in the state of Ohio is limited to exemptions enumerated in O.R.C. § 2329.66. Ohio's homestead exemption statute, O.R.C. § 2329.66(A)(1)(b) states, in pertinent part, as follows:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order as follows:
(1) ...
(b) [T]he person's interest, not to exceed five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.

United States Constitution, and violates due process and equal protection guaranteed by the Constitution. He further suggests that § 522(b)(3) violates the Uniformity and Contract clauses of the United States Constitution. Tangentially related to that argument, Trustee also posits that the state of New Hampshire does not have the constitutional authority to impose its exemptions on Ohio residents. The Trustee claims Debtors should only be allowed to claim an exemption under Ohio law, which allows a homestead exemption of $5,000 per person,[3] or under the federal exemption scheme, which allows a homestead exemption up to $18,450.[4]

In contrast, the Debtors argue that § 522(b)(3) is constitutional because: (1) the Trustee does not have a vested property interest in the Debtors' homestead protected by the Takings Clause of the Fifth Amendment; (2) filing bankruptcy is not a fundamental right and Congress' enactment of § 522(b)(3) was a reasonable exercise of its authority to prevent abuse of the bankruptcy process; and (3) New Hampshire's homestead exemption may be claimed in real property located outside its borders.

**3.** O.R.C. § 2329.66(A)(1).

**4.** 11 U.S.C. § 522(d)(1).

**5.** Before § 522 was amended by the BAPCPA, it provided as follows:
(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. Such property is—
(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is

## III. CONCLUSIONS OF LAW

11 U.S.C. § 522($l$) requires a debtor to file a list of property that the debtor claims as exempt, and unless a party in interest objects, the debtor's exemptions will be allowed. The "objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr.P. 4003(c).

### A. New Hampshire Exemption

Pursuant to the Bankruptcy Act of 1978, a debtor is allowed to claim certain assets exempt from the debtor's bankruptcy estate under 11 U.S.C. § 522. Since passage of the 1978 Act, the provisions of the Bankruptcy Code have been amended numerous times, most recently by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[5] BAPCPA amended § 522, to provide, in pertinent part, as follows:

(b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.

applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place ...

This older provision does not significantly differ from the current statute, other than the lengthened testing period (from 180 days to 730 days) on which the debtor's domicile is determined. As stated in *In re Virissimo*, 332 B.R. 201, 203 (Bankr.D.Nev.2005), "BAPCPA did not amend the mechanics of determining which exemptions were available to debtors in opt-out states. Rather, it added language to 11 U.S.C. § 522(b) to lengthen the domiciliary requirements to claim a particular state's exemption law...."

(2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

(3) Property listed in this paragraph is—

(A) subject to subsections (*o*) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place[.]

11 U.S.C. § 522(b). Pursuant to the statute, a debtor can choose to claim certain property exempt under the federal exemption scheme provided in 11 U.S.C. § 522(d) or under applicable state law exemptions. 11 U.S.C. § 522(b). However, individual states may prohibit debtors from using the federal exemption scheme, which is commonly referred to as "opting-out" of the federal exemptions. *See* 11 U.S.C. § 522(b)(2). The effect of "opting-out" is to allow states to create more generous or more restrictive exemptions for debtors than those provided by the federal exemptions listed in § 522(d). Ohio has "opted out"; New Hampshire has not.

■ However, "[a] debtor may only claim the state law exemptions available in her state of residence if she has lived in that state for two or more years as of the petition date." *In re Underwood,* 342 B.R.

358, 360 (Bankr.N.D.Fla.2006). If a debtor has not lived in her state of residence for two years, her exemptions shall be those allowed by the state "in which the debtor's domicile was located for 180 days immediately preceding the [two year] period." 11 U.S.C. § 522(b)(3)(A). The Debtors in the instant case have not resided in Ohio for two years, and thus, they cannot claim the exemptions set forth in Ohio law. The Debtors did, however, live in New Hampshire for the entire 180 day period preceding the 2 year period before the petition date of this case. Accordingly, pursuant to § 522(b)(3)(A), the Debtors must look to New Hampshire law or federal law for the purpose of determining exemptions. Therefore, the Debtors have properly claimed exemptions under New Hampshire law.

■ Furthermore, pursuant to New Hampshire law, debtors may elect to use either the state's exemption scheme or the federal exemptions. *See In re Vaillancourt,* 260 B.R. 66, 70 (Bankr.N.H.2001) (noting the repeal of the state statute that prohibited the use of federal exemptions). New Hampshire's homestead exemption provides, in part, that "[e]very person is entitled to $100,000 worth of his or her homestead ... which is owned and occupied as a dwelling by the same person...." N.H.Rev.Stat. Ann. § 480:1. Although the New Hampshire homestead exemption can only be claimed if the debtor is occupying or residing in the property that is being claimed exempt, "[t]he New Hampshire homestead exemption may be utilized by the [d]ebtor to exempt an interest in property located outside New Hampshire because the language of the homestead statute, [N.H.Rev.Stat. Ann. § ] 480:1, does not limit the homestead exemption to property located in New Hampshire." *In re Weza,* 248 B.R. 470, 473 (Bankr.D.N.H.2000).

In this case, the Debtors have chosen to use the homestead exemption available under New Hampshire's exemption scheme which allows them to exempt the full value of their real property (i.e., $50,000). The Debtors own and reside in the real property being claimed exempt. Accordingly, the New Hampshire homestead exemption may be claimed in property located in Ohio because the Debtors reside in it, and New Hampshire's homestead exemption is not limited to property located within its borders.

■ The Trustee, however, argues that the state of New Hampshire is prohibited from imposing its laws on Ohio residents. The Trustee confuses state action with Congress' discretion to make a federal choice of law.

> [T]he trustee's concerns regarding extraterritorial effects of state law are misplaced. We are dealing with a federal statute which has incorporated state law into its application. Upon incorporation, that state law became a part of the federal statutory scheme; so it is federal law being given effect, not state law.

*In re Stockburger*, 192 B.R. 908, 910 (E.D.Tenn.1996), *aff'd*, 106 F.3d 402, 1997 WL 41202 (6th Cir.1997) (analyzing application of prior version of 11 U.S.C. § 522(b)); *see also Bartlett v. Giguere (In re Bartlett)*, 168 B.R. 488, 494 (Bankr. D.N.H.1994) (holding that the exemption right under § 522 "is a matter of federal law as to applicability, even though the amount and items of exemption are defined and set forth in existing state statutes."). "Nowhere does § 522(b) refer to the location of the property, nor does it refer to the location of the bankruptcy court." *Stockburger*, 192 B.R. at 910. A

plain reading of § 522(b) leads to the conclusion that the governing state law is that where the debtor was domiciled during the time period specified in the statute. *See Stockburger*, 192 B.R. at 910. The formula for determining a debtor's exemptions contained in 11 U.S.C. § 522(b)(3)(A) incorporates New Hampshire exemption law as the applicable state law in this case because the Debtors have not lived in Ohio for two years prior to filing this case, but they did live in New Hampshire for the six months prior to that two year period. Therefore, Debtors' election to use New Hampshire's homestead exemption is not an impermissible extraterritorial application of state law.

## B. Equal Protection and Due Process Clauses

The Trustee's Equal Protection challenge must fail, because § 522(b)(3)(A) is rationally related to a legitimate governmental interest. The Trustee argues that § 522(b)(3)(A) violates the Equal Protection Clause because its application discriminates against Ohio creditors since the New Hampshire homestead exemption is more generous than the homestead exemption under Ohio law. According to the Trustee, "there is no rational purpose in requiring properly domiciled residents living in Ohio ... to use the State of New Hampshire homestead exemption for property they own[ ] in Ohio...." Brief in Support of Trustee's Objection at 6.

"The Equal Protection Clause [of the Fourteenth Amendment] is a restriction on the state governments and operates exclusively upon them." 16B Am.Jur.2d *Constitutional Law* § 793 (2007). However, the Due Process Clause of the Fifth Amendment[6] is applicable to the federal

---

6. *No person shall* be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor

government and "assures every person the equal protection of the laws...." 16B Am. Jur.2d *Constitutional Law* § 790 (2007). "While the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638, n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (quoting *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964)). The Supreme Court's approach to equal protection claims under the Fifth Amendment has always been the same as its approach to equal protection claims under the Fourteenth Amendment. *Weinberger,* 420 U.S. at 638, 95 S.Ct. 1225 (citations omitted).

> Bankruptcy is hardly akin to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment, that the Court has come to regard as fundamental and that demand the lofty requirement of a compelling governmental interest before they may be significantly regulated. Neither does it touch upon what have been said to be the suspect criteria of race, nationality, or alienage. Instead, bankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard, in measuring the propriety of Congress' classification, is that of rational justification.

*United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973).

■ "In enacting 11 U.S.C. § 522(b)(3)(A), Congress created special exemption rules for a specific class of debtors—those that have relocated from one state to another within a defined period of time." *In re Chandler,* 362 B.R. 723, 729 (Bankr.N.D.W.Va.2007). As such, § 522(b)(3)(A) does not involve a fundamental right nor does it involve a suspect classification. Accordingly, § 522(b)(3)(A) will pass constitutional muster if its enactment is rationally related to a legitimate governmental interest.

■ Congress enacted § 522(b)(3)(A) in an attempt to cure a perceived abuse of homestead exemptions that existed under the prior Bankruptcy Code. As noted by the *Chandler* court,

> The purpose of creating [a] separate class of debtors is well articulated: 'The bill also restricts the so-called 'mansion loophole.' Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of their equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their 'mansion loophole' laws. S.256 closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days.'

*In re Chandler,* 362 B.R. 723, 729 (Bankr.N.D.W.Va.2007) (quoting *Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256,* H.R.Rep. No. 109–31, Pt. 1, p. 15–16, 109th Cong., 1st Sess. (2005)). Extending the amount of time that a debtor must live in a state to be eligible to claim its available exemptions is a reasonable exercise of Congress' bankruptcy powers. Congress had a legitimate governmental interest in quelling the perceived abuse of debtors relocating to states that have more gener-

---

shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be *deprived of life, liberty, or property, without*

*due process of law;* nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V (emphasis added).

ous homestead exemptions for the purpose of sheltering their assets from the reach of creditors or a bankruptcy trustee. Therefore, the specific class of debtors (i.e., those that have relocated from one state to another within a defined period of time) is reasonably related to a legitimate governmental objective. Accordingly, § 522(b)(3)(A) does not violate due process or equal protection under the Fifth Amendment. The perhaps unintended effect of the statute as written is that its application may be deleterious to the bankruptcy estate rather than advantageous. Such is the case in this instance; however, the Court cannot apply it selectively to avoid its effect.

## C. Takings Clause

■ Section 522(b)(3)(A) also does not violate the Takings Clause of the Fifth Amendment: the rights that are impaired by the application of the statute in this case are not rights of the kind protected by the Takings Clause. The Takings Clause of the Fifth Amendment prohibits the taking of private property for public use [7] without just compensation. Congress has the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. "Generally, this authority 'includes the power to discharge the debtor from his contracts and legal liabilities as well as to distribute his property.'" In re Webber, 674 F.2d 796, 802 (9th Cir.1982) (quoting Hanover National Bank v. Moyses, 186 U.S. 181, 188, 22 S.Ct. 857, 46 L.Ed. 1113 (1902)). "[B]ankruptcy legislation has historically operated to affect creditors' interests which accrued prior to the effective date of the legislation." In re Ward, 14 B.R. 549, 560 (S.D.Ga.1981) (citations omitted). Nonetheless, "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." United States v. Security Industrial Bank, 459 U.S. 70, 75, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (citation omitted).

■ The difficulty with the Trustee's argument in this case is that there is no taking here; the unsecured creditors' claims do not rise to the level of a property interest afforded protection under the Takings Clause of the Fifth Amendment. Unsecured creditors do not have interests in any of a debtor's property prior to the debtor filing bankruptcy. Their claims against a debtor prior to a bankruptcy proceeding are simply a right to collect payment from the debtor.

In support of his theory, the Trustee relies upon Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), stating that "mortgages, conditional sales contracts, purchase-money security interests and statutory security interests are 'property' encompassed by the [Fifth] Amendment protections." [8] However, Radford is inapposite. In the Radford case, the interests protected were not general liens, but rather were mortgages on specific property which created vested rights in specific property. In re Ashe, 712 F.2d 864, 869 (3d Cir.1983). The creditors in this case do not have any vested rights in specific property nor possess any of the interests described in and protected by the Fifth Amendment. They have only a contractu-

---

7. This Court doubts that a trustee's administration of a bankruptcy estate qualifies as "public use" within the scope of the Fifth Amendment because the trustee only represents the interests of certain creditors in a case and not the public at large.

8. Brief In Support of Trustee's Objection at 1.

al right to collect payment on a debt.[9]

Therefore, the Trustee's argument that 11 U.S.C. § 522(b)(3)(A) is an unconstitutional taking must fail because the creditors do not have a property interest that is protected under the Takings Clause of the Fifth Amendment.

### D. Uniformity Clause

■■■ Section 522(b)(3)(A) does not violate the Uniformity Clause of United States Constitution because it is uniformly applied to a specified class of debtors. The Uniformity Clause refers to Article I, Section 8, clause 4 which grants to Congress the power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4.

[P]erfect uniformity is not required by the Constitution; rather, the ... uniformity requirement is neither a 'straightjacket that forbids Congress to distinguish among classes of debtors,' nor does it require the elimination of differences among states to 'resolve geographically isolated problems.' ... In short, the Uniformity Clause forbids only arbitrary regional differences in the provisions of the Bankruptcy Code, and private bankruptcy bills that are limited to a single debtor.

*In re Chandler*, 362 B.R. 723, 728 (Bankr. N.D.W.Va.2007) (citations omitted). It has long been recognized that the exemption scheme set forth in § 522 is constitutional even though it allows states to "opt out." *See Storer v. French (In re Storer)*, 58 F.3d 1125, 1130 (6th Cir.1995) (citations omitted). Have the amendments wrought

by BAPCPA changed that? This Court thinks not.

As discussed earlier, the post-BAPCPA version of § 522(b)(3)(A) creates a specific class of debtors based on whether they have relocated from one state to another within a defined period of time.

[C]reating a separate class of debtors for purposes of claiming exemptions based on the length of time such debtors have lived in a particular state [does not violate] the Uniformity Clause ... because: 1) the law is uniformly applicable to any debtor that relocates from one state to another; 2) the class of debtors ensnared by § 522(b)(3)(A) is well defined; 3) it is not a private bankruptcy bill; and 4) the classification is not arbitrary inasmuch as the classification is a Congressional attempt to prohibit debtors from moving to a new state for the purpose of filing bankruptcy.

*In re Chandler*, 362 B.R. 723, 729 (Bankr. N.D.W.Va.2007); *see also Drummond v. Urban (In re Urban)*, 375 B.R. 882, 892 (9th Cir. BAP 2007) ("Congress may enact a bankruptcy law to address a particular problem, so long as the law operates in every place in the country in the same way."). This Court agrees with the Chandler court that § 522(b)(3)(A) does not violate the Uniformity Clause of the Constitution. Therefore, the Trustee's objection based on his Uniformity Clause challenge is overruled.

### E. Contract Clause

■■■ Finally, the Trustee appears to argue that the application of the New Hampshire homestead exemption in this

---

**9.** The Trustee did not assert that any of the creditors had obtained judgment liens prior to the Debtors filing bankruptcy. Even if creditors in this case had obtained a judgment lien prior to the bankruptcy case being filed, they still may lack protection under the Takings Clause of the Fifth Amendment. *See In re Ashe*, 712 F.2d 864, 869 (3d Cir.1983) (noting that "[n]onspecific judicial liens have not been regarded as property interests subject to a taking analysis.").

case violates the Contract Clause of the Constitution. The Contract Clause provides that "[n]o State shall ... pass any Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10, cl. 1. "The Constitution ... does not in terms prohibit Congress from impairing the obligation of contracts as it does the states." *Continental Illinois Nat'l Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co.,* 294 U.S. 648, 680, 55 S.Ct. 595, 79 L.Ed. 1110 (1935). "Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the states, it is not prohibited from impairing the obligation of contracts." *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). "In fact, the very essence of bankruptcy laws is the modification or impairment of contractual obligations." *In re Webber,* 674 F.2d 796, 802 (9th Cir.1982). Current standards for Contract Clause analysis consist of the following: 1) there must be a determination that the state law impairs the contract; 2) the impairment must be substantial; and 3) it must be determined whether the impairment is permissible as a legitimate exercise of the state's sovereign powers. *In re Evans,* 362 B.R. 275, 283 (Bankr.D.S.C.2006) (citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–12, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983)). As discussed previously, the law at issue in this case is federal law not state law since 11 U.S.C. § 522(b)(3)(A) merely incorporates state law into the application of federal law. Thus, the Trustee's Contract Clause challenge must fail because there is no state law at issue in this case.

Furthermore,

[I]n today's mobile society and given the choice of law provisions in the bankruptcy code, a creditor cannot reasonably anticipate a borrower's future exemptions under 11 U.S.C. § 522 at the time a debt contract is executed. Therefore, a contracting party has no reasonable expectation that any particular state's exemption law in existence at the time a debt is incurred is a substantial yet unwritten part of its contract should the debtor file for bankruptcy protection in the future. As federal bankruptcy law and mobility routinely alter the collection remedies associated with any prepetition debt, contracting parties have no logical basis for incorporating any state's current exemption law into a debt contract by implication, as there is no guarantee or even reasonable expectation that the law in effect at the time and in that place will be applicable in a bankruptcy proceeding.

*In re Evans,* 362 B.R. 275, 283–84 (Bankr. D.S.C.2006). In the instant case, the Trustee argues that the creditors located in Ohio relied upon the belief that Ohio's exemption laws would apply in a bankruptcy proceeding involving the Debtors when they entered into their contracts with them. Since none of the Debtors' creditors objected to the exemptions as claimed, this Court cannot determine if in fact they did rely upon the existence and future application of Ohio's exemptions in the event of a bankruptcy proceeding. Nonetheless, it would have been unreasonable for the creditors to have such an expectation in light of our society's transient nature and relative ease in relocating domiciles. Moreover, the Trustee may step into the shoes of certain creditors for certain purposes, *see e.g.,* § 544, but there is no general provision that he steps into the shoes of a creditor for general purposes. Accordingly, § 522(b)(3)(A) does not violate the Contract Clause, and the Trustee's objection is overruled on that basis.

## III. CONCLUSION

Section 522(b)(3)(A), for the reasons stated above, is constitutional, and man-

dates that the Court look to the law of the domicile of the Debtor as determined by that statutory section. Under that provision, exemptions authorized by New Hampshire law are the proper state exemptions to be applied in this case. Therefore, Debtors are authorized to claim the New Hampshire homestead exemption and the Trustee's Objection to Debtors' claim of exemption must be overruled. A separate Order will be entered consistent with the foregoing.

**IT IS SO ORDERED.**